**Ronald D. YOUNG, et al., Appellants,**

v.

**WASHINGTON GAS LIGHT COMPANY, Appellee.**

No. 99–7091.

United States Court of Appeals, District of Columbia Circuit.

Submitted on the Briefs Jan. 27, 2000.

Decided March 31, 2000.

Rehearing En Banc Denied May 18, 2000.

---

Ronald H. JaraShow filed the brief for appellants.

Robert N. Eccles and Valerie G. Roush were on the brief for appellee.

Before EDWARDS, Chief Judge, GINSBURG, Circuit Judge, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Judge BUCKLEY.

BUCKLEY, Senior Judge:

Ronald Young and sixteen other former employees of Washington Gas Light Company claim that the company breached its fiduciary duties under the Employee Retirement Income Security Act by failing to disclose, prior to their retirement, that the company was considering implementation of a "one-time-only" voluntary separation incentive program. The district court dismissed the case for lack of subject matter jurisdiction based on its finding that the

claims did not arise under the Act. We affirm.

## I. BACKGROUND

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1994), is the statute regulating employee pension and welfare benefit plans. An "employee welfare benefit plan" is defined as

> any plan, fund, or program which ... is ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries [specified benefits].

*Id.* § 1002(1). Such plans may include those that provide severance benefits. *See id.* § 1002(1)(B) (employee welfare benefit plans include those that provide any benefit specified in 29 U.S.C. § 186(c), which includes severance benefits, 29 U.S.C. § 186(c)(6)); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 n. 5, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("Section 1002(1)(B) has been construed to include severance benefits paid out of general assets, as well as out of a trust fund."). ERISA imposes specified duties on ERISA plan administrators with respect to the plan and its participants and their beneficiaries. *See* 29 U.S.C. § 1104.

Young and the other appellants (collectively, "Young") were employed as first line supervisors or managers with Washington Gas Light Company ("Washington Gas") prior to their respective retirements during a period from January 1 through June 1, 1996. As such, they participated in Washington Gas's regular retirement plan, which is subject to ERISA ("ERISA retirement plan"). In 1995, Washington Gas began work on a plan to restructure the company; and, on June 28, 1996, it formally announced the plan, which included a retirement incentive program called "Voluntary Separation Pay Window Program" ("Window Program" or "Program"). The Program offered employees classified as "first line supervisors or above" a one-time opportunity to receive specified severance benefits upon voluntary separation from the company.

Such employees were qualified to receive those benefits if they (1) elected to receive separation pay under the Program; (2) had thirty years of service with the company or a combination of age and service totaling ninety as of December 31, 1996; (3) submitted a separation pay election form during a twelve-day "window" beginning July 8, 1996; (4) remained in active employment until the separation date without being terminated for cause; and (5) signed a waiver of claims against the company. The company would select a separation date no later than March 31, 1997 for each of the electing employees. Any employee who met the Program's requirements would receive, upon separation from the company, a lump-sum payment equal to fifty-two weeks of base pay together with the option to participate in a three-day outplacement services program.

According to their complaint, Young and his fellow appellants retired under Washington Gas's ERISA retirement plan between January 1, 1996 and June 1, 1996 while the restructuring of the company was under consideration but before the final plan and the accompanying Window Program had been announced. During that period, Washington Gas was aware that normal attrition among its first line supervisors and managers would not be sufficient to accomplish its restructuring goals and that it would have to implement a retirement incentive program in order to encourage the desired number of voluntary separations. Before retiring, each of the appellants asked the company whether such a program was being considered; and in each case, the company replied that none was.

Young contends that Washington Gas was under an obligation to inform first line supervisors and managers considering retirement during the period between January 1, 1996 and the announcement of the Window Program that the company did not anticipate that normal attrition by re-

tirement would meet the levels desired for restructuring and that a retirement incentive program was under consideration. Because that information was withheld, Young brought this suit alleging that the company had breached its fiduciary duties under ERISA. Although Young also asserted various District of Columbia common law claims, federal jurisdiction depends on whether he has alleged a claim cognizable under ERISA.

District Judge Thomas Penfield Jackson held that the Window Program was not a "plan" governed by ERISA; and, because in the absence of a federal claim, he had no basis for exercising jurisdiction over the District of Columbia claims, he dismissed the suit for lack of federal jurisdiction. *Young v. Washington Gas Light Co.*, No. 97–3129, order (D.D.C. Apr. 28, 1999). Young filed a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

We accept Young's factual allegations as true and review *de novo* the dismissal of his complaint for lack of subject matter jurisdiction. *Moore v. Valder*, 65 F.3d 189, 196 (D.C.Cir.1995).

Young asserts two bases for claiming that Washington Gas violated its obligations under ERISA. First, he maintains that the Window Program was itself a plan subject to ERISA and that Washington Gas breached its fiduciary duty in its role as administrator of that plan. Second, he claims that Washington Gas breached its fiduciary duty under its ERISA retirement plan by failing to inform him and the other appellants that it was considering implementation of the Window Program. Neither argument has merit.

### A. Jurisdiction based upon Window Program

 ERISA does not specify what constitutes a "plan" within the meaning of the statute. The Supreme Court, however, has made clear that not every grant of an employee benefit is governed by ERISA. The Court noted that the stat-

ute's focus was "on the administrative integrity of benefit plans—which presumes that some type of administrative activity is taking place," *Fort Halifax Packing*, 482 U.S. at 15, 107 S.Ct. 2211, and concluded that ERISA only applies "with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11, 107 S.Ct. 2211. As a consequence, ERISA is not implicated by "[t]he requirement of a one-time, lump-sum payment triggered by a single event" because "[t]o do little more than write a check hardly constitutes the operation of a benefit plan." *Id.* at 12, 107 S.Ct. 2211. Therefore, whether a benefit is regulated by ERISA turns on the nature and extent of the administrative obligations that the benefit imposes on the employer.

Although *Fort Halifax Packing* has not yet been applied by this court, the decisions of other circuits agree with the proposition

> that an employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries.

*Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 454 (1st Cir.1995); *see, e.g., Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994); *Kulinski v. Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 257–58 (8th Cir. 1994); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538, 1540 (3d Cir.1992).

Under the Window Program, the determinations of eligibility and the amount of the benefits to be paid were purely mechanical and were based on one triggering event: the eligible employee's election to retire pursuant to the terms of the Program. Washington Gas was only required to make the straightforward factual determination of whether the employee had met each of the conditions specified in the Program, such as the requirements that the employee submit an election form and meet certain length-of-service criteria, and

then to calculate the amount of the separation payment by multiplying the employee's base pay rate by fifty-two. These are not the kinds of administrative decisions that require ERISA's protection. *See, e.g., Velarde v. PACE Membership Warehouse, Inc.,* 105 F.3d 1313, 1316–17 (9th Cir.1997) (plan offering different benefits to those terminated for cause or not for cause "failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan"); *Belanger,* 71 F.3d at 452, 455 (plan allowing age-qualified workers to receive variable payment based on years of service required only mechanical decision making and was not governed by ERISA).

As Young points out, the Window Program required one discretionary act on the part of Washington Gas, namely the selection of a specific separation date on or before March 31, 1997 for each of the electing employees. The exercise of this limited discretionary right, however, did not create a need for an ongoing administration of the benefit; therefore, it did not bring the Program under ERISA. *Cf. Delaye,* 39 F.3d at 237 (severance payments to be made over the course of up to 24 months "does not rise to the level of an ongoing administrative scheme"); *Angst,* 969 F.2d at 1539 (obligation to make one-time lump-sum termination payment and to continue employee's existing benefits for one year not an ERISA plan because obligation to provide continuing benefits "did not require the creation of a new administrative scheme, and did not materially alter an existing [one]"). Therefore, applying the test established in *Fort Halifax Packing,* we conclude that the Window Program was not subject to ERISA. Accordingly, this claim cannot serve as the basis for federal jurisdiction over Young's complaint.

**B. Jurisdiction based upon ERISA retirement plan**

 The ERISA retirement plan administered by Washington Gas also fails to provide the district court with jurisdiction over Young's claims. The fiduciary responsibilities of an ERISA plan administrator are detailed in section 1104 of the Act, as codified, which reads, in relevant part, as follows:

> [A] fiduciary shall discharge his duties *with respect to a plan* solely in the interest of the participants and beneficiaries and—
>
> (A) for the *exclusive* purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan. . . .

29 U.S.C. § 1104(a)(1)(A) (emphasis added). There is nothing in the section to suggest that an ERISA plan administrator has a fiduciary duty to disclose information unrelated to the plan even if an employee might consider that information important to his decision to retire. Nor can we find any section of the statute that requires disclosures unrelated to the plan; indeed, the disclosure requirements are limited to information about the plan itself. *See, e.g., id.* § 1021 (requiring disclosure of summary plan description, terminal reports, failure to meet minimum funding standards, and transfer of excess pension assets).

Although the Supreme Court has stated that the federal courts, in interpreting the fiduciary standards imposed by ERISA, will "develop a federal common law of rights and obligations under ERISA-regulated plans," *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (internal quotation and citation omitted), none of the cases dealing with a plan administrator's duties under ERISA have required him to assume responsibilities that are unrelated to the plan itself. The authorities upon which Young relies only serve to underscore this point, as each concerns a plan administrator's fiduciary duty when he seeks to modify an existing ERISA plan or to substitute a new plan for one already in place. *See, e.g., Varity Corp.,* 516 U.S. at 502–03, 116 S.Ct. 1065 (plan administrator breached fiduciary

duty by misrepresenting to plan participants that benefits would be unchanged by switch from ERISA plan to a new plan); *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 121, 124 (2d Cir.1997) (company has fiduciary duty to inform ERISA plan beneficiaries that it is considering implementation of new severance plan which would replace former ERISA plan); *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750, 752 (D.C.Cir.1990) (ERISA fiduciary had duty to inform plan beneficiary of available continuation options under plan once company terminated group plan).

In contrast to the situations presented in these cases, the Window Program did not replace, amend, or supplement Washington Gas's ERISA retirement plan; it merely created one-time benefits that were in addition to, and independent of, those to which the company's employees continued to be entitled under its ERISA retirement plan. Therefore, because Washington Gas had no fiduciary duty under its ERISA retirement plan to inform Young that a retirement incentive program was under consideration, this claim also failed to provide the district court with jurisdiction over this suit.

Nevertheless, because the district court dismissed only the ERISA claims with prejudice, Young is free to pursue his common law claims in the appropriate court.

### III. CONCLUSION

Because Young has failed to allege a claim under ERISA, the decision of the district court dismissing this action for lack of subject matter jurisdiction is

*Affirmed.*